IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| 6363 WEST 73RD STREET, LLC, | ) | Case No. 26-10122 |
| Debtor. | ) | Judge Timothy A. Barnes |

# NOTICE OF MOTION

TO: *See* Attached Certificate of Service

PLEASE TAKE NOTICE that on **July 14, 2026, at 9:00 am.**, I will appear before the Honorable Timothy A. Barnes, or any judge sitting in that judge's place, either in courtroom 744 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604, or electronically as described below, and present the **HARV-BEDFORD PARK LLC AND FP-BEDFORD PARK LLC'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR RELIEF FROM AUTOMATIC STAY**, a copy of which is attached and is served on you.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/join. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 160 329 5276, and the passcode is 433658. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

Respectfully submitted,

HARV-BEDFORD PARK LLC and FP-BEDFORD PARK LLC

By /s/ James P. Sullivan
One of Its Attorneys

James P. Sullivan (#6256746)
CHAPMAN AND CUTLER LLP
320 S. Canal Street Street
Chicago, Illinois 60606
(312) 845-3000
jsullivan@chapman.com

J. Ryan Potts
Adam Powers
BROTSCHUL POTTS LLC.
1 Tower Lane
Suite 2060
Oakbrook Terrace, Illinois 60181
(312) 551-9003
ryan@brotschulpotts.com
apowers@brotschulpotts.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| 6363 WEST 73RD STREET, LLC, | ) | Case No. 26-10122 |
| | ) | Judge Timothy A. Barnes |
| Debtor. | ) | |

**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR RELIEF FROM THE AUTOMATIC STAY**

**NOW COMES** HARV-BEDFORD PARK LLC and FP-BEDFORD PARK LLC (*"Secured Creditors"*), by and through its attorneys, Chapman and Cutler LLP and Brotschul Potts LLC, and in support of their Motion to Dismiss, or in the Alternative for Relief from the Automatic Stay, respectfully state as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. This motion is brought pursuant to 11 U.S.C §1112 and 11 U.S.C. §362(d)(1) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction of this contested matter pursuant to 28 U.S.C. §§1334 and 157, and 11 U.S.C. §§361-363.

3. On June 16, 2026 (the *"Petition Date"*), 6363 West 73rd Street, LLC (*"Debtor"*), filed for relief under chapter 11 of the Bankruptcy Code.

4. Debtor previously filed for relief under chapter 11 of the Bankruptcy Code on February 3, 2026, Case No. 26-02031 (the "*First Case*").

5. The First Case was dismissed for cause on May 12, 2026. First Case, Dkt. No. 44.

6. The instant case, just like the First Case was filed on the eve of a judicial sale, as more fully detailed below, to prevent Secured Creditors from completing a long pending foreclosure pending in Cook County, Illinois.

## A. Debtor and the Property

7. Debtor is an Illinois limited liability company whose sole asset is the real property—a single, non-residential commercial parcel located at 6363 West 73rd Street, Bedford Park, Illinois 60638 (the "*Property*").

8. Viktor Kotsyulym signed the Petition as the managing member of Debtor, but in fact, Intelix Management Inc. is the manager of Debtor. *See* Debtor's Annual Report filed with the Illinois Secretary of State on February 20, 2026, attached hereto as Exhibit 1.

9. On the Petition, Debtor checked the box affirmatively designating itself as "Single Asset Real Estate" as defined in 11 U.S.C. § 101(51B). Dkt. No. 1, ¶ 7.A. Debtor's Schedules confirm this designation: the Property is Debtor's only real property and Debtor reports no inventory, no machinery or equipment, no investments, and no operating assets beyond a checking account at Fifth Third Bank with an $84.00 balance, and $3,000.00 in money orders. Dkt. No. 1, Schedule A/B, Part 1.

## B. The Pre-Petition Foreclosure Judgments

10. The Property has been the subject of a fully-litigated commercial mortgage foreclosure in the Circuit Court of Cook County, Illinois, Chancery Division, captioned *Harv-Bedford Park LLC v. 6363 West 73rd Street, LLC, et al.*, Case No. 2024 CH 10964 (the "*Foreclosure Action*").

11. Debtor appeared and was represented by counsel in the Foreclosure Action. On December 18, 2025, following oral argument, Judge Seaton denied each of Debtor's motions—including Debtor's Motion to Vacate or Modify the Mortgagee in Possession Order, Debtor's Motion to Stay or Extend Time to Respond to Summary Judgment, and Debtor's Motion for Leave to File Affirmative Defenses—and entered summary judgment and judgments of foreclosure and

sale in favor of both lienholders. The judgment orders were entered of record on December 19, 2025.

12. By the Judgment of Foreclosure and Sale in favor of the first lienholder, Harv-Bedford Park LLC, as assignee of Harvest Small Business Finance, LLC (the "*First Lienholder*"), the state court found the First Lienholder to hold a valid, first and paramount lien on the Property and entered judgment in the amount of $5,791,127.07, with per diem interest continuing to accrue at $1,301.20 per day after December 18, 2025. Debtor expressly waived its right of redemption as to the First Lienholder's mortgage, and any reinstatement period expired on August 19, 2025.

13. By the Judgment of Foreclosure and Sale in favor of FP-Bedford, as assignee of Pan American Bank & Trust (the "*Second Lienholder*"), the state court found FP-Bedford to hold a valid second lien on the Property and entered judgment in the amount of $3,020,697.50, and authorized FP-Bedford to credit bid up to $2,089,317.67 at the judicial sale. Both judgments expressly provided that there is "no just cause to delay enforcement and/or appeal" of the orders. The FP-Bedford judgment and credit bid have been accruing per diem in interest of $475.40 and $630.14 per day after December 18, 2025.

14. In addition to the two mortgage liens, the Cook County Treasurer holds a senior statutory lien for delinquent real estate taxes. Debtor's own Schedule D lists the Cook County Treasurer's claim for past-due property taxes, and the state court found Debtor delinquent on taxes for tax years 2022, 2023, and the first installment of 2024.

**C. Debtor's Schedules Understate the Secured Debt and Overstate Equity**

15. Debtor's Schedules, when compared against the entered foreclosure judgments and the Cook County Clerk's estimate of cost of redemption, materially understate the debt encumbering the Property and rely on an unsupported, self-serving valuation.

16. First, Schedule D lists only a single mortgage claim, attributed to "FP-Bedford Park, LLC," in the amount of $5,791,127.07. That figure is incorrect. $5,791,127.07 is the amount of the *First Lienholder's* (Harvest) judgment—not FP-Bedford's. Schedule D omits the senior Harvest first-lien judgment as a separate secured claim and fails to separately schedule FP-Bedford's own second-lien judgment of $3,020,697.50. Moreover, both amounts fail to account for the per diem interest and attorney's fees which have accrued since the date of the judgment and which have been awarded in the First and Second Lienholder judgment orders.

17. Second, Schedule D lists the Cook County tax claim at only $400,000.00. The actual delinquency is materially greater. According to the Cook County Clerk's Estimate of Cost of Redemption (Order No. 3937387), the total estimated cost to redeem the Property is **$404,953.15** through the redemption deadline. More significantly, the Property has already been sold at the annual tax sale: the 2022 general taxes were sold under Certificate No. 22-0002137 on December 11, 2024, to Fundpality 2023 LLC, and subsequent taxes for 2023 and 2024 (totaling, with penalties, over $190,000 in subsequent-tax line items) remain unpaid and are subject to the certificate. The statutory redemption period expires on August 10, 2026. If Debtor fails to redeem, the tax-sale purchaser may seek a tax deed extinguishing all interests in the Property—including FP-Bedford's lien. This is a separate and imminent threat to the Property that the Schedules obscure.

18. Properly stated, the consensual and statutory encumbrances senior to or competing with Debtor's residual interest are as follows:

| **Lien / Claim** | **Amount** |
|---|---:|
| Cook County – estimated cost of redemption (tax sale Cert. No. 22-0002137; redemption deadline 8/10/2026) | $404,953.15 |
| First Lienholder (Harvest) – judgment of foreclosure | $5,791,127.07 |
| Second Lienholder (FP-Bedford) – judgment of foreclosure | $3,020,697.50 |
| TOTAL SECURED / SENIOR ENCUMBRANCES | $9,216,777.72+ |

19. Per diem interest continues to accrue on both judgments after December 18, 2025 ($1,301.20/day on the First Lien; $475.40/day and $630.14/day on the FP-Bedford notes), and tax redemption penalties increase every six months, further increasing the debt due Secured Creditors.

20. Even using Debtor's own $10,000,000.00 valuation of the Property, once the omitted First Lien, the full tax redemption amount, the accruing per diem interest, and post-judgment fees and costs are properly accounted for, the equity cushion non-existent and is, in any event, not adequate protection for FP-Bedford's junior position when measured against a single, illiquid asset that Debtor has not operated as a going concern and that is simultaneously exposed to loss through a tax-deed proceeding.

**D. Debtor's Petition Is Not Consistent with Prior Representations in the First Case**

21. In the First Case, Debtor did not schedule any executory contracts or unexpired leases. First Case, Dkt. No. 14.

22. In the First Case, Debtor's two monthly operating reports showed only $15,968.00 in income for the months of February and March 2026. First Case, Dkt. Nos. 25, 39.

23. In the state court foreclosure case, Debtor produced a single lease with KLM Trans, Inc. commencing on January 1, 2022, and stated no rent had been received after July 16, 2025. *See* Debtor's discovery response attached hereto as Exhibit 2.

24. KLM Trans, Inc. is owned and operated by Ihor Kotsyulym, Viktor Kotsyulym's father. *See* KLM Tran, Inc.'s Annual Report filed with the Illinois Secretary of State attached hereto as Exhibit 3.

25. In the present case, Debtor has scheduled two leases. One with KLM Trans, Inc. that allegedly commenced in May 2024 and is for $9,000/month and one with MPL Express, Inc. and is for $20,000/month (with no start or end date). Dkt. No. 1, Schedule G. MPL Express, Inc. is owned and operated by Nadia Kotsiulym, who is, upon information and belief, Viktor Kotsyulym's

ex-wife. *See* MPL Express, Inc.'s Annual Report filed with the Illinois Secretary of State attached hereto as Exhibit 4.

26. Debtor also claims to have earned gross revenue of $110,000.00 in 2026 and $749,537 in 2024. Dkt. No. 1, Statement of Financial Affairs. Neither of these figures make sense. For example, $29,000 in monthly lease receipts in the first 6 months of 2026 would total $174,000.00. Further, to have over $700,000 in income in 2024 would mean that the monthly lease rates that year would have had to have been more than double what they are alleged to be today. Debtor also reports an "unknown" amount of income in 2025. Inexplicably, Debtor had three quarters of a million dollars in income in 2024 and yet has no idea what income was earned in 2025.[1]

27. KLM Trans, Inc. is a judgment debtor subject to numerous judgments, not including the First and Second Lien judgments, totaling in the millions of dollars entered in Illinois state and federal courts. *See* copies of judgment orders attached hereto as Group Exhibit 5.

28. Either the reported 2026 income is completely false and fabricated, or Debtor failed to account for it when it filed the two monthly operating reports in the First Case.

29. Likewise, either the scheduled leases are fabricated or Debtor forgot they existed when it filed its schedules in the First Case.

---

1 Debtor did make one (1) adequate protection payment to Secured Creditors in the First Case (on the eve of dismissal). The adequate protection payments were in the form of cashier's checks from Fifth Third Bank. The total amount was $47,864.50 – which does not match what Debtor is reporting as monthly lease payments now. More importantly, the funds could not have come from alleged tenant KLM Trans, Inc. because BMO Bank N.A. served a Citation to Discover Assets on Fifth Third shortly after the adequate protection payments were received by Secured Creditors and Fifth Third responded that it held no accounts in the name of KLM Trans, Inc. A true and correct copy of Fifth Third Bank's Citation Answer is attached hereto as Exhibit 6.

**E. Debtor Does Not Have and Will Not Provide a Viable Plan**

30. In a last-ditch attempt to stay the foreclosure sale in the state court case, Debtor produced a letter of intent for the purchase of the Property from CDL Advisor, Inc. for a purchase price of $8,000,000.

31. The letter of intent was signed by Elvira Anton. Elvira Anton is the mother of Irina Anton. Irina Anton is a long-time cohort of Viktor Kotsyulym, who has testified in an eviction proceeding relating to another of Viktor Kotsyulym's troubled real properties that she works with Debtor and is the corporate representative of KLM Trans, Inc.

32. Any sale to CDL Advisor, Inc. would not be an arms-length transaction and would essentially be to an insider.

33. Any plan proposed by Debtor in this case will surely involve a sale of the Property. Any proposed sale will surely involve Irina Anton. Any proposed sale will be for far less that the Secured Creditors' debt and unacceptable to Secured Creditors. Debtor has presented Secured Creditors with numerous letters of intent in the foreclosure case, none of which ever resulted in a purchase contract and none of which were acceptable to Secured Creditors.

**F. Debtor Does Not Have Legitimate Unsecured Creditors**

34. The Petition lists three (3) unsecured creditors but does not specify the amount of the unsecured creditors' claims. Despite this being Debtor's second filing in 6 months, that Debtor cannot specify the amounts due to these alleged creditors is telling.

35. Vemali, Inc.'s business is unknown. According to its Annual Report filed with the Illinois Secretary of State, Vemali, Inc. operates out of a residence in Romeoville, Illinois. *See* Vemali, Inc. Annual Report attached hereto as Exhibit 7.

36. Northwater Management, Inc. does not appear to be a corporation organized in the State of Illinois. The address listed on the Petition for Northwater Management, Inc, is an apartment building.

37. Safety First, Inc. was dissolved in 2017.

**G. Debtor's Co-Debtors are Bad Actors**

38. Debtor lists V3 Systems, Inc, Viktor Kotsyulym and KLM Trans, Inc. as co-debtors.

39. As noted above, KLM Trans, Inc. is a serial judgment debtor.

40. V3 Systems, Inc. is no different. *See* Group Exhibit 5.

41. The lynchpin though is Viktor Kotsyulym (also a judgment debtor in several state court proceedings, who has been twice arrested on body attachments entered by the Cook County state court) – who is the alleged manager of Debtor, and owner/operator of V3 Systems, Inc. and KLM Trans, Inc. V3 Systems, Inc. and KLM Trans, Inc. are freight trucking companies.

42. Despite defaulting on loan agreements with Siemens Financial and BMO Bank N.A. and having Judgment, Replevin and Turnover Orders entered against them, V3 Systems, Inc. and KLM Trans, Inc. continue to operate trucks and trailers that are the subject of the Replevin and Turnover Orders and avoid repossession of same.

43. Both BMO Bank N.A. and Siemens Financial were forced to file Complaints with the Illinois Secretary of State Police to prosecute instances of VIN scrubbing (removal of VIN numbers) and license plate removal, which made it impossible for both BMO Bank N.A. and Siemens Financial to identify their respective collateral. A copy of BMO Bank N.A.'s Complaint is attached hereto as Exhibit 8.

## **Cause Exists to Dismiss This Case**

44. In relevant part, Section 1112(b) of the Bankruptcy Code provides that on request of a party in interest, and after notice and hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause". 11 U.S.C. §112(b)(1).

45. Section 1112(b)(4) sets forth numerous ground that constitute "cause" for dismissal. *See* 11 U.S.C. §1112(b)(4)(A)-(P). The list is not exhaustive. A case may be dismissed for causes other than those stated in section 1112(b)(4). *See In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009)("Good faith is generally recognized as a prerequisite for eligibility to file a Chapter 11 case. Lack of good faith can constitute 'cause' for dismissal of a case under §1112(b)…").

46. Once cause is established, the debtor has the burden of proving the required exceptions to fend off dismissal. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). To avoid dismissal, the court must find "unusual circumstances" "establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11 U.S.C. §1112(b)(2).

47. Those such unusual circumstances do not exist in this case. Debtor's second case in a matter of months is a bad faith filing. *See In re Tekena USA, LLC* at 346 ("One of the hallmarks of bad faith in filing a petition is pre-petition litigation already pending in the state court between the parties.").

48. Here, Debtor has few, if any, unsecured creditors. Debtor is pursuing this case solely to stave off, for the second time, on the eve of a judicial sale, a foreclosure that has been litigated in state court for 2 years. The bad faith factors (hereinafter, each a "*Factor*") Nos. 1 and 2 as set forth in *In re Tekena* thus weigh heavily in favor of dismissal.

49. Debtor's prepetition behavior has been less than proper. Debtor has failed to pay real estate taxes, obstructed the Secured Parties' foreclosure, provided lease information that was apparently false (as Debtor now claims to have two valid leases), tried unsuccessfully to stay enforcement of the First and Second Lien Judgments and filed the First Case to stop a foreclosure sale. Debtor's co-debtor KLM Trans, Inc. (one of the now alleged tenants) is also subject to numerous judgments and an eviction at the hands of Secured Creditors. Factor No. 3 weighs in favor of dismissal.

50. The present case was clearly filed to avoid the state court foreclosure judgment and foreclosure sale. Factor Nos. 4 and 6 weigh in favor of dismissal.

51. There are few, if any debts due to non-moving parties. Like the leases, the unsecured debt is likely fabricated. Debtor has now had two chances to quantify the debt due to unsecured creditors and cannot provide what may be due and owing to these entities. Factor No. 5 weighs in favor of dismissal.

52. The Property is Debtor's sole asset. Factor No. 7 weighs in favor of dismissal.

53. Debtor has no ongoing business or employees. It simply owns a non-income producing parcel of commercial real estate. Factor No. 8 weighs in favor of dismissal.

54. Debtor has no income. The monthly statements filed in the First Case prove this. Debtor cannot now fabricate some $110,000 in 2026 income when it reported a fraction of that just months ago in the First Case and presently its bank account has $84.00 in it. Factor No. 10 weighs in favor of dismissal.

55. There simply is no possibility of reorganization. This case, like the First Case, is meant only to buy Debtor time to avoid a judicial sale. Debtor has no ability to satisfy the debt due to the Secured Creditors, let alone the Cook County Treasurer. Debtor will just run the same playbook as in the state court foreclosure and produce a letter of intent from an insider – which the

Secured Creditors will not approve of. While this case is, of course, in its infancy, what is apparent, just like in the First Case, this case is truly just a two-party dispute (which Debtor is utilizing to frustrate Secured Creditors' contractual remedies). Factor Nos. 9 and 12 weigh in favor of dismissal.

56. Debtor filed the instant case solely to create an automatic stay – one that the Secured Creditors should no longer (and for the second time in less than 6 months) be burdened with. Factor No. 14 weighs in favor of dismissal.

57. With nearly every Factor weighing against the Debtor, this case should be dismissed with prejudice. Bankruptcy courts have the authority to sanction bad faith serial filers by prohibiting future bankruptcy filings for longer periods of time that the 180 days specified by Section 109(g). *See In re D&G Construction Dean Gonzalez, LLC*, 635 B.R. 232, 240 (Bankr. E.D. NY 2021)("Debtor's successive bankruptcy filings on the eve of scheduled foreclosure sales … as well as its use of the bankruptcy process merely as a platform to delay the lawful exercise of state law rights and attack final orders of other courts, warrants dismissal of this case with prejudice to Debtor's ability to refile for relief under any chapter of the Bankruptcy Code.").

**IN THE ALTERNATIVE, SECURED CREDITORS ARE ENTITLED TO STAY RELIEF**

58. Should Debtor somehow survive dismissal, Secured Creditors are entitled to stay relief.

59. After the movant makes an initial showing of cause, the debtor bears the burden of proof to demonstrate the absence of cause to grant relief from stay. 11 U.S.C. §362(g)(2); *In re Kerns*, 111 B.R. 777, 786 (S.D. Ind. 1990) ("the debtor, as the party opposing the motion for relief from the stay, had the ultimate burden of proof to show that cause did not exist for vacating the stay"); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr. N.D. Ill. 1991).

60. A debtor lacks "equity" if the aggregate amount of claims secured by the property is greater than the property's value. *See Pegasus Agency v. Grammatikakis (In re Pegasus Agency)*, 101 F.3d 882, 886 (2d Cir. 1996); *Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 206 (3rd Cir. 1995).

61. As of the date of this Motion, the outstanding indebtedness owed Secured Creditors exceeds $9 million and real estate taxes have been sold and remain unpaid. Debtor's valuation of the Property is unsubstantiated and contradicted by the $8,000,000.00 letter of intent Debtor produced on the eve of filing this case.

62. Debtor has no equity in the Property, and its only plan is to sell the Property, which Secured Creditors would only allow for if the sales proceeds paid the Secured Creditor in whole.

63. Moreover, Debtor's only non-paying tenants at the Property are subject to third-party judgment in other cases in excess of a million dollars; thus, their ability to pay rent to provide Secured Creditors with any adequate protection is specious at best.

64. Debtor has no business operations, no employees, no material unsecured creditor body to reorganize, and no apparent source of new value or exit financing—and its first attempt at reorganization was dismissed for cause. A single-asset debtor whose only objective is to retain a fully-foreclosed property and pay off an over $9 million secured debt has no realistic path to confirmation, and the Property is therefore not "necessary to an effective reorganization" within the meaning of § 362(d)(2)(B).

65. Section 362(d)(4) authorizes a court to grant relief from the stay with respect to real property where the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either (a) the transfer of all or part ownership of, or other interest

in, the property without the consent of the secured creditor or court approval, or (b) multiple bankruptcy filings affecting the property.[2]

66. The facts here squarely satisfy the "multiple bankruptcy filings" prong. Debtor filed the First Case in February 2026. That case was dismissed for cause and just thirty-five days later Debtor filed the present case. Each filing was strategically timed to halt enforcement of the same foreclosure judgments against the same Property. Two successive bankruptcy filings affecting the Property, both interposed to stop an imminent judicial sale after Debtor lost on the merits in state court, establish a scheme to delay and hinder the secured creditors within the meaning of §362(d)(4)(B). "'Strategic' bankruptcy filings timed to coincide with events in a related foreclosure action strongly suggest a scheme to hinder or delay the secured creditor." *In re Garcia*, 2022 WL 665825, *6 (N.D. Ill.).

2 An order entered under § 362(d)(4), if recorded in compliance with applicable state law, is binding *in rem* for two years and is not subject to the automatic stay in any subsequent case purporting to affect the Property.

WHEREFORE, Secured Creditors respectfully pray that the Court grant this Motion and

1. enter an order dismissing this case for cause and with prejudice, or
2. alternatively, modifying the automatic stay to the extent that it applies to the Property finding the elements of §362(d)(4) have been met, allowing Secured Creditors to pursue remedies in the state court foreclosure proceeding and waiving the 14-day stay period provided by Rule 4001(a)(3).
3. Secured Creditors also pray for an award of attorney's fees, and
4. for such other and further relief to which it may show itself justly entitled.

Date: June 25, 2026

Respectfully submitted,

HARV-BEDFORD PARK LLC and FP-BEDFORD PARK LLC

By: /s/ James P. Sullivan
James P. Sullivan

James P. Sullivan
CHAPMAN AND CUTLER LLP
320 South Canal Street
Chicago, Illinois 60606
Telephone: 312.845.3445
Facsimile: 312.516.1445
Email: jsullivan@chapman.com

J. Ryan Potts
Adam Powers
BROTSCHUL POTTS LLC.
1 Tower Lane
Suite 2060
Oakbrook Terrace, Illinois 60181
(312) 551-9003
ryan@brotschulpotts.com
apowers@brotschulpotts.com

## Certificate of Service

I hereby certify that, on this 25th day of June 2026, a copy of the foregoing document was served upon all registered ECF users authorized to receive electronic notice in this case and the creditors and parties identified in the attached matrix.

/s/ James P. Sullivan

Label Matrix for local noticing
0752-1
Case 26-10122
Northern District of Illinois
Eastern Division
Thu Jun 25 11:04:00 CDT 2026

6363 West 73rd Street, LLC
6363 West 73rd Street
Bedford Park, IL 60638-6126

Fundpality 2023, LLC
100 N. LaSalle Street, Suite 710
Chicago, IL 60602-5045

Cook County Treasurer
118 North Clark Street, Room 112
Chicago, IL 60602-1590

MPL Express, Inc.
6363 West 73rd Street
Bedford Park, IL 60638-6126

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

KLM Trans, Inc.
6363 W. 73rd Street
Bedford Park, IL 60638-6126

Safety First, Inc.
616 Main Street
Saint Charles, IL 60174-8319

Mail Stop 5014CHI
230 S. Dearborn Street, Room 2600
Chicago, IL 60604

Northwater Management, Inc.
2456 Emerald Ct.
Woodridge, IL 60517-3971

Viktor Kotsyulym
6363 W. 73rd Stret
Bedford Park, IL 60638-6126

V3 Systems, Inc.
747 E. Boughton Rd., Unit 319
Bolingbrook, IL 60440-2281

Vemali, Inc.
7937 S. Harlem Avenue
Burbank, IL 60459-1600

Esteban Valtierra
Robbins DiMonte
216 W. Higgins Road
Park Ridge, IL 60068-5706

Adam G. Brief
Office of the U. S. Trustee, Region 11
219 South Dearborn
Room 873
Chicago, IL 60604-2027

Carolina Y. Sales
Robbins DiMonte
216 W. Higgins Rd.
Park Ridge, IL 60068-5706

Julia Jensen Smolka
Robbins DiMonte, Ltd.
216 W. Higgins Road
Park Ridge, IL 60068-5706